# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 433 | **DATE** | 8/28/2001 |
| **CASE TITLE** | James Settles vs. Illinois Department of Human Services | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Illinois Department of Human Services's motion for summary judgment (Doc. 9-1) is granted on Settles' claim of race discrimination based on theories of disparate treatment and disparate impact as well as Settles' retaliation claim. Defendant's motions to strike (Docs. No. 19-1, 19-2, 21-1) are denied without prejudice. Judgment is entered in favor of Defendant Illinois Department of Human Services and against Plaintiff James Settles.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **2** | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 29 2001 | **27** |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | EB | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/28/2001 | |
| ETV | courtroom deputy's initials | FILED FOR DOCKETING 01 AUG 28 PM 3: 58 | date mailed notice | |
| | | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES SETTLES,               )
                             )
                Plaintiff,   )
                             )
        v.                   )        No. 00 C 433
                             )
ILLINOIS DEPARTMENT OF       )        Judge Rebecca R. Pallmeyer
HUMAN SERVICES,              )
                             )
                Defendant.   )


## MEMORANDUM OPINION AND ORDER

Plaintiff James Settles, an African American, is employed by the Illinois Department of Human Services ("IDHS") as a maintenance equipment operator. In this action, Plaintiff alleges that IDHS discriminated against him based on his race and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 by failing to promote him. Defendant IDHS now moves for summary judgment, on all of Plaintiff's claims. IDHS contends that Settles cannot establish a claim of race discrimination under either a disparate treatment theory or a disparate impact theory, nor can he establish a claim of retaliation. For the following reasons, IDHS's motion for summary judgment is granted on all claims.

# FACTUAL BACKGROUND[1]

## A.   Settles' Employment at IDHS

In June 1981, IDHS hired Settles to work at the Howe Development Center as

a mental health technician.  (Employment Application of James Settles, Ex. G to

---

[1]      Settles has attached an affidavit from himself as well as affidavits from ten other IDHS employees to his Local Rule 56.1 Statement and Additional Facts in Opposition to Defendant's Statement of Facts.  IDHS has moved to strike certain paragraphs of Settles' affidavit on relevancy and hearsay grounds and because they lack foundation and are conclusory.  IDHS has also moved to strike the ten affidavits of Settles' co-workers in their entirety because Settles failed to disclose the identity of any of these witnesses during discovery.  In the alternative, IDHS moves to strike portions of these ten affidavits because they contain hearsay, are irrelevant, conclusory, or lack foundation and factual support.  Furthermore, IDHS has moved to strike certain paragraphs of Settles' Local Rule 56.1 Statement and Additional Facts in Opposition to Defendant's Statement of Facts on grounds that a number of Settles' responses to IDHS's factual statements do not properly controvert IDHS's facts, lack factual support, and require the court to scour the record.

Defendant's motion to strike the ten affidavits of Settles' co-workers is well taken.  The Federal Rules of Civil Procedure are designed to promote liberal discovery in an effort to focus the issues for trial and to prevent unfair surprise.  In accordance with this goal, Rule 26 (e)(2) requires a litigant "seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect."  Should the court determine that a party has violated Rule 26(e)(2) by failing to timely supplement its answers to interrogatories, the court may, at its discretion, impose sanctions including an order barring the undisclosed evidence, a continuance, or any other action the court deems appropriate under the circumstances.  *See Holiday Inns, Inc. v. Robertshaw Controls Co.,* 560 F.2d 856, 858 (7th Cir. 1997).

Nonetheless, in the interest of giving Settles the benefit of the doubt, the court will not exclude the ten affidavits from his co-workers in their entirety.  Those portions of Settles' own affidavit and the affidavits of his co-workers that are irrelevant, contain hearsay, lack foundation, and lack factual support are not considered here, however.  Nor will the court consider those paragraphs of Settles' Local Rule 56.1 Statement and Additional Facts in Opposition to Defendant's Statement of Facts that lack factual support in the record or require the court to scour the record for support.  In any event, the court notes that this ruling on the motion to strike has little effect on the outcome of IDHS's motion for summary judgment. Settles would not have defeated summary judgment had the court allowed his affidavit and the affidavits of his co-workers to be admitted in their entirety.

Defendant's Rule 56.1(a) Statement of Facts (hereinafter "Def.'s Rule 56.1(a) St.").) In October of the same year, Settles transferred to the Elisabeth Ludeman Developmental Center ("ELDC"), another facility operated by IDHS, where Settles is currently employed. (Plaintiff's Local Rule 56.1 Statement and Additional Facts in Opposition to Defendant's Statement of Facts (hereinafter "Pl.'s Rule 56.1 St.") ¶¶ 2-3.) At the ELDC, Settles continued to work as a mental health technician until 1990, when he was promoted to the position of storekeeper. (Employment Application of James Settles, Ex. G to Def.'s Rule 56.1(a) St.)

Since beginning his employment with IDHS, Settles believes that he has been subjected to ongoing discrimination. (Pl.'s Rule 56.1 St. ¶¶ 105-06.) In June 1992, Settles filed a charge of discrimination against IDHS with the Equal Employment Opportunity Commission, alleging that IDHS discriminated against him when it failed to select him for the position of maintenance equipment operator, a position for which he had applied and interviewed. (Id. ¶ 107.) Settles and IDHS eventually settled the charge in April 1994 and Settles was promoted to his current maintenance equipment operator position as part of the settlement. (Id. ¶ 108; Settlement Agreement, Ex. G to Def.'s Rule 56.1(a) St.)

It is undisputed that Settles has not received any discipline at ELDC. (Pl.'s Rule 56.1 St. ¶ 114.) While he was counseled for taking an unauthorized break in May 2000, counseling does not constitute discipline under the union agreement between IDHS and the State and Municipal Teamsters, Chauffeurs and Helpers Union, Local 726, International Brotherhood of Teamsters Cook County, the agreement that governs

Settles' position of maintenance equipment operator. (*Id.* ¶¶ 115-17.)

In May 1999, ELDC had a vacancy for the position of stationary engineer. (*Id.* ¶ 4.) On May 7, 1999, Roger Addison, Human Resource Director for ELDC, posted a vacancy notice on the bulletin board outside the human resource office at ELDC. (Affidavit of Roger Addison (hereinafter "Addison Aff.") ¶ 20, Ex. A to Def.'s Rule 56.1(a) St.) Addison also sent the vacancy notice to eight other work locations within the ELDC for manual posting. (*Id.* ¶ 21.) In addition, Addison contacted an African American applicant, Cecil Brooks, who had sent ELDC an application approximately a year earlier, made Brooks aware of the vacancy, and recommended that Brooks submit a current application for the position. (*Id.* ¶ 26.) On the same day, Addison entered the vacancy notice on the Illinois Central Management Services ("CMS") computerized job posting system. (*Id.* ¶ 22.) The vacancy notice included the following information: the position identification number; the date of the posting and final date on which applications were to be submitted; the job title; the number of positions available; the work location; the salary range; the hours of work; a general description of the job duties; the requisite education, training, and experience; instructions for completing a CMS (Central Management Service) 100 application form; and the office location to which the application should be sent. (*Id.* ¶ 23.) The notice specifically stated that the position "REQUIRES FOUR YEARS EXPERIENCE IN POWERPLANT OPERATIONS." (Stationary Engineer Vacancy Notice, Ex. G to Def.'s Rule 56.1(a) St.) The vacancy notice for the stationary engineer position remained posted for approximately two weeks after May 7, 1999. (Addison Aff. ¶ 24.) The final date for

4

applications was May 20, 1999. (*Id.* ¶ 25.)

Settles noticed the posting for the stationary engineer position outside the ELDC human resources office on May 19, 1999. (Deposition of James Settles on October 25, 2000 (hereinafter "Pl.'s Dep."), at 11, Ex. E to Def.'s Rule 56.1(a) St.) The next day, Settles submitted his written application for the stationary engineer position to the ELDC human resources office. (Addison Aff. ¶ 27.) Settles did not have any power plant experience when he applied for the stationary engineer position. (Pl.'s Rule 56.1 St. ¶ 51.) Once the application deadline expired, Addison prepared a bid packet for the stationary engineer position. (Addison Aff. ¶ 27.) The bid packet listed Settles' name and included his written application. (*Id.* ¶ 29.) Altogether, there were nine applicants for the stationary engineer position, three of whom were African American. (*Id.* ¶ 28.)

On May 25, 1999, Addison forwarded the bid packet to Rebecca Wagner, Public Service Administrator for IDHS's Bureau of Employee Services, to be logged in, reviewed for completeness, and forwarded to IDHS's Bureau of Recruitment and Selection. (*Id.* ¶ 30.) IDHS's Bureau of Recruitment and Selection received the bid packet and assigned Roseanne Addesso, Hiring Coordinator, to conduct interviews for the stationary engineer position. (Affidavit of Roseanne Addesso (hereinafter "Addesso Aff.") ¶ 6, Ex. B to Def.'s Rule 56.1(a) St.) After receiving the bid packet, Addesso contacted Addison and together they initially determined that the interviews would be conducted on July 8, 1999, beginning at 9:15 a.m. (*Id.* ¶ 7.) Addesso then instructed her secretary to send each applicant a letter, inviting the applicant to request an interview for the position. (*Id.* ¶ 8.) At the time Addesso instructed her secretary to

send the request-for-interview letters, Addesso testified that she did not recognize the names of any of the applicants, nor was she aware of the race of the applicants. (*Id.* ¶ 9.)

On June 29, 1999, all nine applicants were sent request-for-interview letters. (*Id.* ¶ 10.) These letters included the date of the interviews, the last date to schedule an interview, and the name and phone number of the individual with whom to schedule an interview. (James Settles Request for Interview Letter, Ex. G to Def.'s Rule 56.1(a) St.) The deadline for requesting an interview for the stationary engineer position at ELDC was 4 p.m. on July 7, 1999. (*Id.*) Some time after the June 29, 1999 letters were sent to the applicants, the interview date was moved from July 8, 1999 to July 13, 1999, but the last date to schedule an interview remained 4 p.m. on July 7, 1999. (Addesso Aff. ¶ 13.) Six of the applicants requested an interview prior to that deadline, while two of the applicants did not respond to the June 29 letter. (*Id.* ¶¶ 14,16.) Brooks, the person Addison had specifically invited to apply, was one of the six applicants who responded by the deadline and was interviewed. (*Id.* ¶ 15.) Ultimately, the position was awarded to a white applicant, John Luchsinger. (Pl.'s Dep., at 27.)

Settles admits he received the request-for-interview letter, but he asserts that he did not receive it until July 7, 1999. (Pl.'s Dep., at 22.)[2] On July 8, 1999, Settles telephoned the Bureau of Recruitment and Selection in an attempt to schedule an interview for the stationary engineer position at ELDC. (Addesso Aff. ¶ 17.) Settles

---

[2]     Settles does not allege that his letter was sent intentionally late. Instead, he admits that, along with the letters to the other eight applicants, his letter was sent on June 29, 1999. (Pl.'s Rule 56.1(a) St. ¶ 21.)

spoke first with Mary Ellen Miller, who was then the manager of the Bureau of Recruitment and Selection in Chicago. (Affidavit of Mary Ellen Miller (hereinafter "Miller Aff.") ¶ 8, Ex. C to Def.'s Rule 56.1(a) St.) Settles explained that he had received the request-for-interview letter the preceding day and wished to schedule an interview. (Pl.'s Dep., at 22-26.) Miller informed Settles that she could not schedule an interview for him because his request was untimely. (Miller Aff. ¶¶ 9,10.)

That same day, Settles spoke with Addesso over the telephone. (Addesso Aff. ¶ 18.) Like Miller, Addesso informed Settles that it was too late to schedule an interview for the stationary engineer position. (*Id.*) According to Addesso, the Bureau of Recruitment and Selection rigorously adheres to the established deadlines for responding to its requests for interviews. (*Id.* ¶ 19.) Exceptions to the deadlines are made only on the rare occasions where the position is considered critical to the direct care of patients and where the number of vacancies in those positions exceeds the number of applicants who requested interviews. (*Id.*) A stationary engineer position is not considered a position critical to the direct care of ELDC patients, and Addesso did not believe that the vacancy presented a situation where the Bureau of Recruitment and Selection would normally make an exception to the established deadline. (*Id.* ¶ 20.) In fact, Addesso herself has never interviewed someone who failed to request an interview on time. (*Id.* ¶ 26.) Settles admits that he is not aware of any employee who has been interviewed for any position at IDHS after failing to timely request an interview. (Pl.'s Rule 56.1 St. ¶ 49.)

The parties disagree about whether Miller and Addesso were aware of Settles'

race at the time they refused to schedule him an interview for the stationary engineer position. Settles notes that his written application disclosed his race. (Pl.'s Rule 56.1 St. ¶ 133.) He contends, further, that both Miller and Addesso could have discerned his race from speaking with him on the telephone when he called to request an interview on July 8, 1999. (Pl.'s Rule 56.1 St. ¶ 34.) Miller states, however, that she was unaware of Settles' race until he brought the present lawsuit because she did not review any of the materials or information in the bid packet or receive any information about the applicants. (Miller Aff. ¶ 15.) Similarly, Addesso states that she first became aware of Settles' race in August 1999, after Settles filed a charge of discrimination with EEOC and she was asked to respond to certain questions. (Addesso Aff. ¶ 25.) In answering these questions, Addesso asserts that she reviewed Settles' application for the stationary engineer position, which indicates Settles' race, and discovered for the first time that Settles is African American. (*Id.*)

The parties also disagree about certain of IDHS's hiring and promotional practices. Settles alleges that IDHS does not post job openings at ELDC in accordance with IDHS's job-posting policy, that IDHS engages in word-of-mouth recruiting to fill vacancies at ELDC, and that IDHS "grooms" white employees for skilled crafts jobs at ELDC by temporarily assigning them to skilled crafts positions. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, at 6-7.) Defendant IDHS denies engaging in these alleged practices.

## B.    Job Postings at ELDC

IDHS's job posting policy for skilled craft positions like the stationary engineer

position which Settles sought requires the following: (1) the facility must post the vacancy for 10 days; (2) the posting must include the specific requirements of the position; (3) the posting must be displayed on all posting boards in the facility; and (4) the vacancy must be posted on the CMS computerized job posting system. (Def.'s Rule 56.1(a) St. ¶ 53.) The postings generally contain such information as set forth in the vacancy notice prepared by Addison in this case: the position identification number, the date posted and last date for applications, the job title, and the like. (Addison Aff. ¶ 7.) IDHS asserts that vacancy notices at ELDC are manually posted in the five administrative and professional centers for the residential units at ELDC, which are Buildings 3, 18, 36, 37, and 55. (*Id.* ¶ 9.) Additionally, IDHS asserts that the notices are posted in the business office, the staff development office, the engineering office, and the human resources office. (*Id.*) These buildings are open to all ELDC employees. (*Id.* ¶ 12.)

In addition to this manual job posting, IDHS asserts that it posts jobs on the CMS computerized job-posting service, as well. (*Id.* ¶ 5.) ELDC employees can access the CMS system through a computer, located in Building 61 of the ELDC campus, which ELDC has made available to its employees for the last six years. (*Id.* ¶ 15.) According to Addison, office hours in Building 61 are from 8 a.m. to 5 p.m., Monday through Friday, and employees have round-the-clock access to the building and can make arrangements with the administrative staff to check the system after work hours. (*Id.* ¶ 17.) IDHS also asserts that it has provided its employees with directions on how to use the CMS system, that the directions are posted near the computer in

Building 61, and that administrative staff are available to assist employees with the computer. (*Id.* ¶ 16.) In the past two years, vacancy notices for approximately thirty-one skilled crafts positions in various IDHS facilities have been posted on the CMS system. (Pl.'s Rule 56.1 St. ¶ 68.) The record does not indicate, however, the total number of skilled crafts vacancies at IDHS facilities during the same time period.

Settles acknowledges that IDHS has a policy regarding job postings, but he contends that IDHS does not adhere to that policy. Settles asserted that during his time at the ELDC, he never saw a manual posting for a skilled crafts position on any of the bulletin boards at ELDC. (Affidavit of James Settles (hereinafter "Settles Aff.) ¶ 10, Ex. 1 to Pl.'s Rule 56.1 St.) In light of Settles' deposition testimony that he did see the posting for the position of issue here, the court finds this assertion unconvincing, however. Furthermore, Settles asserts that, while he was aware that the CMS computerized posting system existed, he was not aware that he could gain access to it. (Pl.'s Rule 56.1 St. ¶¶ 70-72.) Settles admits, however, that he never asked anyone at ELDC how to access the CMS system. (*Id.* ¶ 73.)

### C.    Word-of-Mouth Recruiting

Settles also complains that IDHS relies on word-of-mouth recruiting to fill skilled crafts positions at ELDC and that the practice favors white workers. Settles bases this contention on his belief that individuals from outside ELDC who were hired for job openings could not have learned of the job openings unless those individuals were being hand-picked by someone within the facility. He contends, further, that IDHS has not met its goal, set forth in a 1999 IDHS Work Force Analysis and

Affirmative Action Plan, of hiring 25% or more minorities in certain job categories. (*Id.* ¶ 79.)

Settles admits that he is not aware of any written policy relating to word-of-mouth recruiting and that he has not seen any writing confirming management's knowledge of such recruiting. (*Id.* ¶¶ 76, 77.) In fact, Settles points to only one instance where he believes word-of-mouth recruiting occurred: when John Luchsinger was given the position of stationary engineer. (*Id.* ¶ 79.) Apart from his own suspicion, however, Settles offers no evidence that Luchsinger was recruited by anyone. Settles does not know who recruited Luchsinger or even whether that person was anyone from management. (*Id.* ¶ 79.) Instead, Settles reiterates his allegation that the position was not posted (a confusing allegation, considering that, as noted, Settles himself saw at least one posting of the position), and posits that, without such posting, Luchsinger could not have found out about the position by any other method than word-of-mouth recruiting. (*Id.* ¶ 79.) Settles adds that he has other reasons to support this belief, but then cites generally to his "additional facts," which do not, in fact, provide any more support for the notion that Luchsinger was recruited by word-of-mouth. (*Id.*)

## D.    "Grooming" of Employees

Settles further asserts that at ELDC only white employees were "groomed" from non-skilled crafts positions to fill skilled crafts positions. (*Id.* ¶ 81.) Settles asserts that grooming can occur when an employee is temporarily assigned into a position or when an employee is shown the specifics of the job by another employee. (*Id.* ¶ 82.) Specifically, Settles testified that he believes three white employees—Eddie Camelli,

Ben Peterson, and an unnamed power plant worker—were groomed for skilled crafts positions at ELDC. (Pl.'s Dep., at 129.)

Settles believes that Camelli was groomed for a carpenter position in 1992 because Camelli was offered the job and, according to Settles, the opening was not posted. (*Id.*, at 136.) Settles admits, however, that he is not certain whether Camelli was ever temporarily assigned to the carpenter position (*id.*) and IDHS has no records showing any such temporary assignment. (Addison Aff. ¶ 36.)

Settles believes that Peterson was groomed for the position of stationary engineer, but he could not say exactly when this grooming occurred. (Pl.'s Dep., at 136-143.) Instead, he claims only that he saw Peterson's name on a list that indicated Peterson had done stationary engineer work and he observed that Peterson was present in certain areas at ELDC where Settles believed Peterson should not have been. (*Id.* at 139-141.) These facts, coupled with the fact that Peterson had relatives in management positions at IDHS, caused Settles to conclude that "something [was] going on." (Pl.'s Dep. at 140, 142-43.) Settles admits, however, that he did not know what list Peterson's name appeared on and he could not say when he had seen Peterson in those areas at ELDC. (Pl.'s Dep., 137-49.) Settles also admits that he does not know when Peterson was temporarily assigned to the stationary engineer position, or how frequently Peterson was temporarily assigned to the stationary engineer position. (*Id.*, at 137-39, 148-49.) IDHS has no records indicating that Peterson was temporarily assigned to the position of stationary engineer. (Addison Aff. ¶ 32.)

Settles also believes that an unnamed power plant worker at ELDC was

groomed for a skilled crafts position because the unnamed worker received the power plant job—a skilled crafts position—and Settles had observed him doing some of the tasks that stationary engineers do as well. (Pl.'s Dep., at 150-54.) Settles does not remember what jobs he observed the power plant worker doing or when the individual performed the work. (*Id.*, at 150-52.) ELDC has no records of a power plant worker being temporarily assigned to any other positions. (Addison Aff. ¶ 32.)

Finally, Plaintiff notes that in approximately the past two and one half years, ELDC had two skilled crafts vacancies: one for an electrician in April 1998 and the other for the stationary engineer position in May 1999, but neither of those positions went to African Americans. (Defendant's Response to Plaintiff James Settles' Local Rule 56.1(b)(3)(B) Statement of Additional Facts (hereinafter Def.'s 56.1 Response) ¶ 126.) In the 1999 fiscal year, the percentage of skilled crafts workers who were African American was 4.07%. (*Id.* ¶ 136.) Plaintiff notes that this percentage was lower than the percentage of African American workers in any other category of worker at IDHS. (*Id.*)

**DISCUSSION**

## I.   Summary Judgment Standard in Employment Cases

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Flores v. Preferred Tech. Group*, 182 F.3d 512, 514 (7th Cir. 1999). The initial burden of demonstrating the

absence of a genuine issue of material fact falls to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmovant, however, must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Settles has brought this Title VII suit for race discrimination under theories of disparate treatment and disparate impact. Settles also alleges retaliation. IDHS now moves for summary judgment on all claims.

## II.    Disparate Treatment

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove a claim of race discrimination by offering direct evidence of discriminatory intent or by proceeding under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Direct evidence of discriminatory intent usually amounts to a kind of "smoking gun" that clearly indicates that the employer had an intent to discriminate. *Oest v. Illinois Dept. of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001). Here, however, there is no direct evidence of an intent to discriminate, and Settles must proceed under the *McDonnell Douglas* model.

To establish a *prima facie* case of race discrimination in hiring and promotions under that model, Settles must demonstrate that: (1) he belongs to a statutorily

protected group; (2) he applied for and was qualified for an available position; (3) he failed to receive the position; and (4) similarly situated employees outside his class were treated more favorably. *Foster v. Arthur Anderson, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). If Settles can establish a *prima facie* case, IDHS must present a legitimate, nondiscriminatory reason for its action. *See Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000). If IDHS comes forward with such a reason, Settles must demonstrate that IDHS's stated reason for the action was merely a pretext for unlawful discrimination. *Id.*

Settles' discrimination claim clearly fails because Settles cannot make out a *prima facie* case of discrimination. Settles cannot show that he was qualified for the position, nor that similarly situated employees outside his class were treated more favorably. The job posting for the stationary engineer position stated that the position "REQUIRES FOUR YEARS EXPERIENCE IN POWER PLANT OPERATIONS." (Ex. G to Def.'s Rule 56.1(a) St.) Settles admits that when he applied for the stationary engineer position he did not have any power plant experience. (Pl.'s Rule 56.1 St. ¶ 51.) Nevertheless, Settles asserts that he was qualified to be a stationary engineer. At his deposition, he testified as follows:

> Q.  Did you believe -- did you not believe you were qualified for the position?
> A.  I could be qualified for anything. I believe that in my heart. There is nothing you could show me that a man can do with his hands, okay, in skilled crafts that I cannot do.
> Q.  Okay.
> A.  Or I can't pick up a book and do it.
> Q.  Okay.
> A.  I guarantee you that.

(Pl.'s Dep., at 60-61.) While the court does not doubt Settles' capacity to absorb new information and master new techniques, his contention that he *could* be qualified for the position of stationary engineer if shown what to do does not establish that he *was* qualified for the position in May 1999.

Settles also fails to make out a *prima facie* case under *McDonnell Douglas* because he cannot establish that similarly situated employees outside his class were treated more favorably. To establish that a non-black applicant was similarly situated but treated more favorably, Settles must demonstrate that the applicant was involved in all of the same circumstances that he was. Thus, Settles must point to a non-black applicant who failed to request an interview in a timely manner but was still granted an interview.[3] Settles admits that he is unaware of anyone who was interviewed for any position at IDHS who did not schedule a timely interview. (Pl.'s Rule 56.1 St. ¶ 49.) Accordingly, Settles has failed to set forth a *prima facie* case of race discrimination under the *McDonnell Douglas* paradigm because he cannot establish that he was qualified for the position of stationary engineer, and he cannot establish that similarly situated employees outside his class were treated more favorably.

Any suggestion that the interview deadline may be viewed as a pretext for discrimination would also fail. IDHS has a strict policy when it comes to request-for-

---

[3] As was previously explained, Plaintiff does not allege that Defendant purposefully delayed sending his letter but, instead, admits that all nine applicants were sent the request for interview letter on the same date, June 29, 1999. *See* Pl.'s Rule 56.1 St. ¶ 21. It does not, therefore, matter whether each applicant received his letter in a timely matter; the only relevant inquiry for this court is whether Defendant allowed other non-black applicants to interview when they failed to request an interview in a timely manner.

interview deadlines, which are overlooked only in circumstances where the position is considered critical to the direct care of patients and where the number of vacancies for the position exceeds the number of applicants who requested an interview. (Pl.'s Rule 56.1 St. ¶ 39.) IDHS's history of strictly adhering to deadlines for requesting an interview militates against a finding by this court that IDHS's stated reason for refusing to interview Settles for the position of stationary engineer was merely a pretext for discrimination. Simply put, there is no evidence that racial animus motivated IDHS's decision to refuse Settles an interview. Accordingly, summary judgment is granted in favor of IDHS on Settles' disparate treatment theory of race discrimination.

## III. Disparate Impact

Settles challenges three alleged IDHS employment practices under disparate impact theory: word-of-mouth recruiting, "grooming" of employees, and failure to post job openings.

Disparate impact differs from disparate treatment in that disparate impact does not require the plaintiff to show intentional discrimination by the defendant. *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996). A disparate impact exists where a facially neutral employment practice has a disproportionately harmful effect on members of a statutorily protected class. *Id.* A plaintiff demonstrates a *prima facie* case of disparate impact by: (1) isolating and identifying the specific employment practices that are allegedly responsible for the asserted statistical disparity; and (2) demonstrating that the employment practice at issue caused the exclusion of

applicants for jobs or promotion because of their membership in a statutorily protected group. *Id.*

In most disparate impact cases, the parties agree that the defendant engages in a facially neutral employment practice, but dispute whether the plaintiff can demonstrate that the employment practice at issue caused the exclusion of applicants for jobs or promotion because of their membership in a protected class. In this case, the parties dispute whether IDHS engages at all in the employment practices alleged by Settles. Accordingly, the court will first analyze whether Settles can establish that IDHS engages in the challenged employment practices, and only then will examine whether Settles can demonstrate that the alleged practices caused the exclusion of applicants for jobs or promotion because of their membership in a protected class.

Settles first asserts that IDHS engages in word-of-mouth recruiting, but offers no evidence, other than his own suspicions, for this assertion. Indeed, Settles admits that, other than the stationary engineer position for which he applied in 1999, he is unaware of any other positions filled by word-of-mouth recruiting. (*Id.* ¶ 80.) As for the stationary engineering position, there is no evidence that Luchsinger was recruited for the job by word-of-mouth. Settles admits that he does not know who recruited Luchsinger or whether this recruiter, if there was one, was anyone from management. (*Id.* ¶ 78.) Settles offers no testimony from Luchsinger himself; instead, Settles merely infers that Luchsinger must have been recruited because the position was not posted outside the facilities and because IDHS has not met its goal of hiring 25% or more

minorities in a certain job category. (*Id.* ¶ 79.)[4] The court therefore finds that Settles has failed to establish that such a practice of recruiting exists at IDHS.

Settles next contends that IDHS "grooms" white employees for skilled crafts positions by temporarily assigning them to such positions. Specifically, Settles claims that three white ELDC employees—Eddie Camelli, Ben Peterson, and an unnamed power plant worker—were groomed for skilled crafts positions during Settles' tenure at ELDC. Again, however, Settles offers no evidence, beyond his own suspicion, to support this claim.[5] Settles sets forth no specifics pertaining to the nature or extent of the "grooming" the aforementioned three employees allegedly received.[6] Owing to

---

[4]     Settles does claim he has other reasons for forming this opinion (*see id.*) but then fails to set forth such reasons anywhere in the record. Ironically, the only evidence of word-of-mouth recruiting in this case is Addison's admission that he contacted Cecil Brooks, an African American man, and invited him to apply for the position. Thus, even if this court were to find that Plaintiff has provided some evidence to show that word-of-mouth recruiting does exists, the evidence does not support a finding that such recruiting favored non-African Americans.

[5]     Indeed, one of the men who Settles claims was groomed for the stationary engineer position, Ben Peterson, actually applied for the stationary engineer position at the same time Settles did, but was not offered the position at that time. (Def.'s Rule 56.1 St. ¶ 93.)

[6]     Settles' responses to IDHS's Rule 56.1(a) Statement of Facts provide a particularly good illustration of Settles' failure to set forth specific evidence that white employees at ELDC were groomed for skilled crafts positions at ELDC. Paragraph 97 of IDHS's statement of facts, for example, states, "ELDC does not offer temporary assignments in skilled crafts positions to any workers." Settles' response to this paragraph states that Settles denies the allegations of paragraph 97 and then instructs the court to see paragraphs 90-92 of *IDHS's* statement of facts, all of which Settles admits as true. Paragraphs 90-92 of IDHS's statement of facts read:
  90.     Settles believes Peterson was groomed because: 1) he saw Peterson's name on some list, indicating he had done stationary engineer work; 2) Peterson had relatives in management positions
(continued...)

this paucity of evidence, the court finds it impossible to conclude that IDHS engages in the practice of grooming white employees for skilled crafts positions at ELDC.

Finally, Settles contends that IDHS does not post job openings for skilled crafts positions at ELDC. As described above, IDHS does have posting requirements for skilled crafts positions. (Def.'s Rule 56.1(a) St. ¶ 53.) IDHS asserts that in the past two years, ELDC has had two skilled crafts vacancies and that both positions were manually posted on ELDC's bulletin boards. (*Id.* ¶ 62.) During the same time period, IDHS posted vacancy notices for over thirty skilled crafts positions in various IDHS facilities on the CHS computerized job posting system. (Pl.'s Rule 56.1 St. ¶ 68.)

Settles denies, however, that IDHS complies with its posting requirements. To support his argument, Settles cites to a paragraph in his own affidavit which states, "In my years at [ELDC] I have never seen a posting for a skilled craft job on any of the bulletin boards including the administration building bulletin boards which I check from time to time." (Settles Aff. ¶ 10.) In addition, Settles submits affidavits of ten of

---

[6](...continued)
at the Howe Development Center, and 3) Settles saw Peterson in certain areas at ELDC where he believed Peterson should not be.

91.    Settles admitted that he does not know on what list Peterson's name appeared, when these temporary assignments occurred, how long the temporary assignments lasted, or on how many occasions Peterson was temporarily assigned to the stationary engineer position.

92.    IDHS has no records showing that Peterson was temporarily assigned to the position of stationary engineer.

Settles cannot controvert factual assertions by IDHS by citing to other factual assertions by IDHS that themselves support IDHS's argument.

his co-workers, insisting that they have not seen a posting for a skilled craft job on these bulletin boards.

The court is skeptical of both Plaintiff's and his co-workers' assertions that IDHS does not follow its own posting practices in light of the following: 1) Plaintiff himself admits that he found out about the stationary engineer position (a skilled crafts position) through a posting outside the personnel office at ELDC; 2) almost all of Plaintiff's co-workers insisted they had never seen a posting for a skilled craft job on any of the bulletin boards *including personnel* despite the undisputed fact that at least one skilled worker position (the stationary engineer position) was so posted. Had Settles disclosed the names of these co-workers in discovery, IDHS may have had the opportunity to question them as to why they missed this posting.

Even assuming, however, that IDHS does fail to post notices of open skilled craft positions, this fact provides little support for a disparate impact claim because IDHS's failure to post job openings presumably deprives both African American and non-African American workers of relevant information.[7] To establish disparate impact, Settles would have to demonstrate that white workers, but not African American workers, were able to get access to information about job openings despite IDHS's failure to post. Settles has offered no evidence that suggests that this in fact occurs;

---

[7]    Indeed, Settles' co-workers' affidavits do not disclose any of the affiants' races. Without this information, it is impossible even to discern whether it is only African American co-workers who have not seen these postings or if it is, in fact, all workers.

21

as previously noted, Settles' submissions do not support a finding that IDHS engages in "grooming" or word-of-mouth recruiting.

Nor has Settles presented statistical evidence that compares the percentage of African Americans *qualified* for skilled craft positions in the labor market with the percentage of African Americans in skilled crafts positions at IDHS. Absent such evidence, "racial imbalance in one segment of an employer's work force does not, without more, establish a *prima facie* case of disparate impact with respect to the selection of workers for the employer's other positions, even where workers for the different positions may have somewhat fungible skills." *Id.* at 653. *See also Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650 (1989) (*quoting Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977)) (the "proper comparison is between the racial composition of the at-issue jobs and the racial composition of the qualified population in the relevant labor market.") Settles' evidence is, therefore, simply inadequate to satisfy either of the requirements for a *prima facie* case of disparate impact.

## IV. Retaliation

Title VII prohibits employers from discriminating "against any . . . employee . . . because he . . . has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). To prove a retaliation claim, a plaintiff must either offer direct evidence of retaliation or employ a burden-shifting approach. *See Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601 (7th Cir. 2001). Under the burden-shifting approach, a plaintiff can establish a prima facie case of retaliation by showing:

(1) he engaged in a statutorily protected activity; (2) he suffered an adverse action by his employer; and (3) there is a causal connection between the protected activity and the adverse action. *See Krause v. City of LaCrosse*, 246 F.3d 995, 1000 (7th Cir. 2001). *But see Bourbon v. Kmart Corp.*, 223 F.3d 469, 477 (7th Cir. 2000) (Posner, J., concurring) (suggesting that requiring the plaintiff to prove causation in retaliation cases is inconsistent with a *McDonnell Douglas*-type burden-shifting framework). If the plaintiff is able to establish a prima facie case, the burden then shifts to the defendant to articulate a non-retaliatory reason for the challenged action. *Russell v. Bd. of Trs. of the Univ. of Ill.*, 243 F.3d 336, 344 (7th Cir. 2001). If the defendant does so, the burden shifts back to the plaintiff to provide evidence that the stated reason is pretextual. *Id.*

Settles argues that IDHS has retaliated against him for filing charges of discrimination with the EEOC and for his activities as a union and NAACP activist by refusing to interview him for the stationary engineer position and counseling him for taking an unauthorized break. IDHS contends that Settles offered no evidence of a causal connection between the protected activities Settles engaged in and the alleged retaliatory conduct. Additionally, IDHS argues that the decision to deny him an interview for the stationary engineer position and counseling does not rise to the level of an adverse employment action. In any event, IDHS argues that it had a legitimate, non-retaliatory reason for denying Settles an interview for stationary engineer.

As IDHS observes, neither Miller nor Addesso was aware of Settles, his employment history, or his employment-related activities at the time Miller and

23

Addesso denied Settles an interview for the stationary engineer position. (Def.'s Rule 56.1(a) St. ¶¶ 34, 35, 42.) Settles argues that both Miller and Addesso had access to his employment file and could have known about his past EEOC discrimination charges and his activities as an activist for the union and the NAACP. (Pl.'s Rule 56.1 St. ¶¶ 34, 35, 42.) Even if Miller's and Addesso's access to Settles' file may be deemed evidence that they were aware of his activities, the court concludes he cannot prevail on a retaliation claim here because, as discussed earlier, IDHS had a legitimate reason for denying Settles the interview: the untimeliness of his request for an interview.

Nor was IDHS retaliating against Settles when he received counseling in May 2000 for taking an authorized break. The Seventh Circuit has concluded that a negative performance evaluation by itself does not constitute an adverse employment action, *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996); a counseling statement is arguably less significant. *See Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998). Because Settles so clearly fails to make out a *prima facie* case of retaliation arising out of the counseling incident, the court finds it unnecessary to inquire into whether IDHS had a legitimate reason for administering the counseling.

Summary judgment is granted for IDHS on Settles' claim of retaliation. IDHS had a legitimate, non-retaliatory reason for declining Settles an interview for the stationary engineer position and Settles cannot establish that counseling is an adverse employment action.

## CONCLUSION

The court finds that Settles has failed to establish a *prima facie* case of race

discrimination under either a disparate treatment or a disparate impact theory. Even if Settles could establish a *prima facie* case of disparate treatment, the court finds that IDHS had a legitimate, non-discriminatory reason for refusing to grant Settles an interview for the stationary engineer position. Finally, the court concludes that IDHS had a legitimate, non-retaliatory reason for refusing to interview Settles for the position of stationary engineer and that Settles cannot establish a *prima facie* case of retaliation arising out of the counseling incident. For these reasons, IDHS's motion for summary judgment (Doc. No. 9-1) is granted on Settles' claim of race discrimination based on theories of disparate treatment and disparate impact as well as Settles' retaliation claim. Defendant's motions to strike (Docs. No. 19-1, 19-2, 21-1) are denied without prejudice.

ENTER:

Dated: August 28, 2001

REBECCA R. PALLMEYER
United States District Judge